Alan J. MISHLER, M.D.,
Plaintiff–Appellee,

v.

Robert D. CLIFT, M.D., Defendant,

and

Nevada State Board of Medical Examiners; Theodore Jacobs, M.D.; Anthony J. Carter, M.D.; M. Ronald Avery, Jr., M.D.; Richard Baker, M.D.; Ikram U. Khan, M.D.; Kathleen Ebner; Eva G. Simmons; Leo A. Wilner, Defendants–Appellants.

Alan J. Mishler, M.D., Plaintiff–Appellee,

v.

Robert D. Clift, M.D., Defendant–Appellant,

and

Nevada State Board of Medical Examiners; Theodore Jacobs, M.D.; Anthony J. Carter, M.D.; M. Ronald Avery, Jr., M.D.; Richard Baker, M.D.; Ikram U. Khan, M.D.; Kathleen Ebner; Eva G. Simmons; Leo A. Wilner, Defendants.

Nos. 98–15796, 98–15918.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1999

Filed Sept. 8, 1999

---

See also: 849 P.2d 291.

Stephen D. Quinn, Deputy Attorney General, Carson City, Nevada, for appellants Drs. Jacobs, Carter, Avery, Baker, Khan, and Ebner, Simmons, and Wilner; Melissa P. Barnard, Jones Vargas, Reno, Nevada, for appellant Dr. Clift.

David H. Miller, Miller, Lane, Killmer & Greisen, LLP, Denver, Colorado, for the appellee.

Before: T.G. NELSON, HAWKINS, and GRABER, Circuit Judges.

**T.G. NELSON, Circuit Judge:**

The issue presented for review in this case is whether the district court erred in denying the Nevada Board of Medical Examiners' motion to dismiss for failure to state a claim based on the grounds of absolute immunity. We hold that while the Board is entitled to absolute immunity for its quasi-judicial acts, such protection does not extend to its ministerial acts. Because each of Dr. Mishler's claims in his complaint relies upon both the quasi-judicial acts and ministerial acts, it was not error for the district court to deny the Board's motion. We, therefore, affirm.

## I. FACTS[1] AND PROCEDURAL HISTORY

This litigation has been ongoing for more than twelve years, and this is the fourth time this case has come up on appeal to the Ninth Circuit. From 1981 to 1985, Dr. Mishler practiced medicine as a neurosurgeon in Nevada. He spoke out against and reported certain improper conduct and practices of other doctors while practicing in Nevada. In 1985, he sought employment in Ohio. In April 1985, the Ohio Board of Medical Examiners ("Ohio Board") contacted the Nevada State Board of Medical Examiners ("Nevada Board") for a letter of verification regarding Mishler's standing to practice medicine in Nevada. At that time there were no disciplinary charges pending against Mishler. The Nevada Board did not respond until September 1985, when it sent a letter stating that Mishler was under investigation in Nevada. As a result, the Ohio Board denied Mishler the opportunity to practice medicine in Ohio.

A year later, in September 1986, the Nevada Board filed charges against Mishler to revoke his license. During the disciplinary proceedings, material evidence was withheld and destroyed by the Nevada Board and hearings were conducted without affording Mishler an opportunity to confront witnesses against him. After the final decision of the board, Mishler pursued administrative remedies in state court. In 1993, the state court proceedings ended when the Nevada Supreme Court reversed all adverse findings against Mishler and dismissed all of the disciplinary charges against him. *See Mishler v. State Bd. of Med. Exam'rs*, 109 Nev. 287, 849 P.2d 291, 297 (1993).

In addition to pursuing administrative remedies, Mishler filed a § 1983 action in federal court against the State of Nevada, the Nevada Board and its members ("Board Members") in their official and individual capacities. After various appeals and twelve years of litigation, the only defendants remaining in this suit are the Board Members in their individual capacities.[2] Mishler's second amended complaint alleges that the Board Members engaged in allegedly unconstitutional and unlawful conduct when performing the following actions: failing to respond to the

---

1. This appeal is from a denial of a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim. Therefore, we recite facts as alleged in Mishler's second amended complaint and assume them to be true for the purposes of our decision. However, the facts have not yet been proved. *See Metro Display Adver. Inc. v. City of Victorville*, 143 F.3d 1191, 1193 (9th Cir.1998).

2. *See Mishler v. Nevada Bd. of Med. Exam'rs*, 896 F.2d 408, 410 (9th Cir.1990) (holding that the verification of Mishler's medical license was part of the protected property interest in the license and reversing the district court's dismissal of his complaint) ("*Mishler I*"); *Mishler v. Nevada Bd. of Med. Exam'rs*, 990 F.2d 1259 (9th Cir. 1993) (holding that Board

Members would not be entitled to qualified immunity for their failure to respond to the Ohio Board inquiry because it was a ministerial act and reversing the district court's dismissal of Mishler's complaint) (unpublished disposition) ("*Mishler II*"); *Mishler v. Nevada State Bd. of Med. Exam'rs*, 94 F.3d 652 (9th Cir. 1996) (holding that Mishler could amend his complaint because the Board had been put on notice that the integrity of its administrative proceedings was at issue and reversing the district court's grant of summary judgment for the Board Members because "no reasonable state official could reasonably believe that malicious deprivation of license verification was lawful") (unpublished disposition) ("*Mishler III*").

Ohio Board verification inquiry; filing false disciplinary charges against him; conducting an "abusive witch hunt";[3] withholding and concealing evidence; disseminating confidential materials to other doctors; conducting hearings on a partial record and without allowing him the opportunity to confront witnesses; and revoking his license. Based on this conduct, Mishler's second amended complaint asserts seven claims for relief: (1) violation of the right to free speech— § 1983 claim; (2) violation of the right to petition the government— § 1983 claim; (3) civil malicious prosecution— § 1983 claim; (4) violation of procedural due process— § 1983 claim; (5) restraint of trade—federal and state law claim; (6) intentional interference with contractual relations—state law claim; and (7) conspiracy—state law claim.

At that point in the litigation, Dr. Clift, one of the Board Members, obtained separate · counsel. Dr. Clift and the Board Members filed motions to dismiss the second amended complaint for failure to state a claim based on absolute immunity. The district court denied their motions indicating that it was unable to discern the difference between the claim to absolute immunity and the prior claim of qualified immunity on which the Ninth Circuit had already ruled. *See Mishler III*, 94 F.3d 652. The Board Members moved for reconsideration. The district court granted the motion for reconsideration, acknowledging that it had made a mistake of law regarding its statement on immunity. However, the district court still concluded that it would not dismiss Mishler's complaint because it could not determine, prior to discovery, whether all of the acts of the Board Members were quasi-judicial. In addition, the court noted that the defendants "moved to dismiss the entire [complaint] on the ground of absolute immunity" and concluded that "it would be inappropriate to grant such relief if it

were to include dismissal of [Mishler's] 'ministerial act' claims." Both the Board Members and Dr. Clift appeal the district court's denial of their motions to dismiss for failure to state a claim.

## II. STANDARD OF REVIEW

 "We review *de novo* the district court's refusal to grant immunity at the pleading stage in a § 1983 action." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See id.* The burden of showing that immunity is available is upon the official who seeks it. *See id.* A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See id.*

## III. ANALYSIS

 State and federal executive branch officials charged with constitutional or statutory violations are entitled to absolute immunity under certain limited circumstances. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). A functional approach is used to determine whether an official is entitled to absolute immunity. *See id.* at 269, 113 S.Ct. 2606. Essentially, the court examines the function performed by the official and determines whether it is similar to a function that would have been entitled to absolute immunity when Congress enacted § 1983. *See id.* at 268–69, 113 S.Ct. 2606. It is the "nature of the function performed, not the identity of the actor who performed it," that is critical to this inquiry. *See id.* at 269, 113 S.Ct. 2606. "Even when [the court] can identify a common-law tradition of absolute immunity for a given function, [the court should] consider[ ] 'whether § 1983's history or purposes nonetheless counsel against

**3.** Mishler explains that "witch hunt," as it is used in his complaint, means a "campaign directed against a particular group of those holding dissenting or unorthodox views." He states that this term does not refer to any

investigatory conduct by the Board Members because he asserts that the Nevada Board did not conduct an investigation prior to filing false charges against him.

recognizing the same immunity in § 1983 actions.'" *Id.* (quoting *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984)).

It is well settled that judges and prosecutors are entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 355, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutorial immunity). Immunity for judges has been an entrenched principle in our legal system for more than a century. *See Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). The essential rationale is that, without protection from retaliatory suits, a judge would lose "that independence without which no judiciary can be either respectable or useful." *Id.* A prosecutor's entitlement to absolute immunity flows from the performance of activities that are intimately associated with the judicial process. *See Imbler*, 424 U.S. at 430, 96 S.Ct. 984. The Supreme Court has also held that executive branch officials, when participating in a federal administrative agency's adjudicative process, are entitled to absolute immunity because they perform functions comparable to those of judges and prosecutors. *See Butz v. Economou*, 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The Board Members and Dr. Clift argue that they are entitled to absolute immunity because they perform quasi-judicial and quasi-prosecutorial functions.[4] They argue that the function of a state medical board is analogous to a federal administrative agency's adjudication and that, under the reasoning of *Butz*, the Board Members should be entitled to absolute immunity for their acts.

### A. *Functionally Comparable Standard*

In *Butz*, the Supreme Court determined that the role of a hearing examiner in a federal administrative agency was " 'functionally comparable' to that of a judge." *Id.* at 513. The Court noted that an administrative hearing officer can issue subpoenas, rule on evidence, supervise the hearings and make decisions. The Court went on to state that "[m]ore importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Id.* The *Butz* Court also held that agency officials performing functions analogous to those of prosecutors would be entitled to absolute immunity. The Court noted that the "decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate ... criminal prosecution." *Id.* at 515. The Court concluded that executive officials participating in federal administrative agency adjudications were entitled to the protections of absolute immunity.

In contrast, after *Butz*, the Supreme Court determined that members of a prison discipline committee were not entitled to absolute immunity. *See Cleavinger v. Saxner*, 474 U.S. 193, 206–07, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). The Court noted that *Butz* articulated several nonexclusive factors as being characteristic of the judicial process and helpful in determining whether absolute immunity should be granted. These factors—relating to the purpose of § 1983 immunity—include:

(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

---

4. Only Dr. Clift argues that the response to the Ohio Board's inquiry is subject to absolute immunity, although he provides no legal argument to support this assertion. The Board Members specifically limit their absolute immunity argument to the claims arising out of the Board's initiation and prosecution of disciplinary proceedings.

*Id.* at 202, 106 S.Ct. 496. Applying these factors, the Court concluded that the prison discipline committee members did not perform classic adjudicatory functions because they were not independent, and procedural safeguards were not of the same measure as those considered adequate in *Butz. See id.* at 202–07, 106 S.Ct. 496. Specifically, the Court noted that committee members were not professional hearing officers, as were administrative law judges, but were merely prison employees whose coworkers were the ones to lodge charges against the inmates. *See id.* at 203–04, 106 S.Ct. 496. The Court likened these committee members to school board members, who are not entitled to absolute immunity. *See id.* at 204–05, 106 S.Ct. 496 (citing *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)).

The Court also focused on the lack of procedural safeguards, noting that prisoners were subject to disciplinary proceedings in which they: (1) were not afforded a lawyer or independent nonstaff representative; (2) could not compel attendance of witnesses or cross-examine them; (3) could not conduct discovery; (4) were not afforded a verbatim transcript; (5) could not prevent hearsay evidence; (6) had no cognizable burden of proof; and (7) were judged by committee members that were not truly independent. *See Cleavinger,* 474 U.S. at 206, 106 S.Ct. 496. Given this context, the Court concluded that qualified immunity would be sufficient to allow committee members to perform their disciplinary function without harassment or intimidation. *See id.* at 207, 106 S.Ct. 496.

Neither the Supreme Court nor this circuit has addressed the specific issue of absolute immunity for the acts of members of a state medical board. However, three circuit courts have held that the acts of such officials are functionally comparable to the acts of judges and prosecutors and thus entitled to absolute immunity. *See*

*Wang v. New Hampshire Bd. of Registration in Med.,* 55 F.3d 698 (1st Cir.1995); *Watts v. Burkhart,* 978 F.2d 269 (6th Cir. 1992) (en banc); *Bettencourt v. Board of Registration in Med.,* 904 F.2d 772 (1st Cir.1990); *Horwitz v. State Bd. of Med. Exam'rs,* 822 F.2d 1508 (10th Cir.1987). Functions discussed in these cases include investigating charges, initiating charges, weighing evidence, making factual determinations, determining sanctions, and issuing written decisions. The courts held that these tasks are functionally comparable to duties performed by courts and prosecutors. *See Wang,* 55 F.3d at 701; *Bettencourt,* 904 F.2d at 783; *Horwitz,* 822 F.2d at 1515.

In addition, each of the courts reasoned that policy considerations counseled for granting absolute immunity. In *Horwitz,* the court justified absolute immunity based on the "strong need" to ensure that board members could perform their functions without harassment and on the presence of "adequate due process safeguards" to protect against unconstitutional conduct. 822 F.2d at 1515. Similarly, in *Bettencourt,* the court determined that because board members served three-year terms and were removable only for cause, they were free from political influence. *See* 904 F.2d at 783. The court also determined that the act of revoking a physician's license was one that is likely to stimulate numerous damages actions and that enough safeguards existed to enhance the reliability of information and the impartiality of decision-making. *See id.*

The Sixth Circuit's opinion in *Watts* provides perhaps the most comprehensive analysis of the considerations and factors weighing in favor of the grant of absolute immunity for medical board members. In *Watts,* after concluding that the board members performed quasi-judicial functions [5] comparable to functions that have been historically granted absolute immunity, the court examined whether the board

5. The Tennessee medical board does not conduct investigations leading up to the filing of charges against doctors or actually file the

charges. *See Watts,* 978 F.2d at 277. Instead, this function was performed by the Department of Health and Environment's Di-

members were subject to restraints and safeguards comparable to those in the judicial process. *See* 978 F.2d at 275. Distinguishing the medical board from the prison disciplinary board in *Cleavinger*, the court focused on procedural protections and the independence of the board members. *See id.* at 276. The court first noted that Tennessee law required that the board's disciplinary proceedings be conducted in accordance with the Tennessee Administrative Procedures Act. The court held that these procedures provided safeguards comparable to those required by federal law. *See id.*

The court also held that the board members were independent professionals. Despite the fact that the board was composed entirely of physicians, the risk of self-interested economic regulation was not enough to deny absolute immunity. *See id.* at 276–77. Further, the members were independent because they were appointed by the governor for renewable four-year terms and their decisions were not reviewed by the governor. *See id.* at 276. The court concluded that board members were as independent as state judges who must periodically stand for re-election. *See id.*

### B. *Absolute Immunity for the Nevada Board of Medical Examiners*

■ In the case at hand, the Board Members and Dr. Clift argue that under the precedent of *Butz* and the circuit court cases, they are entitled to absolute immunity for the acts they performed on the medical board.

### 1. *Need to Ensure Performance of Functions without Harassment.*

The purpose of the Board is to ensure that qualified and competent persons practice medicine in the State of Nevada. Thus, part of the Board's function is to discipline physicians. In some cases, the Board must go as far as to revoke a physician's license. We agree with the court in *Bettencourt* that disciplinary proceedings and the revocation of a physician's license are acts that are likely to stimulate numerous damages actions. *See Bettencourt,* 904 F.2d at 783. In view of the public interest of ensuring quality health care, there is a "strong need" to make certain that Board Members can perform these disciplinary functions without the threat of harassment or intimidation. *See Horwitz,* 822 F.2d at 1515.

### 2. *Safeguards that Reduce the Need for Private Damages Actions.*

The argument that adequate procedural safeguards exist is difficult to dispute. The Nevada Board performs its duties and functions under a comprehensive umbrella of statutes and the Nevada Administrative Procedure Act.[6] These procedures provide

---

vision of Health Related Records. *See id.* Thus, the *Watts* court did not determine whether such functions are comparable to judicial or prosecutorial functions.

6. Once a complaint is received, an investigative committee reviews and investigates it to determine whether there is a reasonable basis for the complaint. *See* Nev.Rev.Stat. § 630.311. The committee may issue orders and compel appearance of the physician to aid its investigation. *See id.* After investigation, the committee presents its evaluation and recommendation to the board, which decides whether further action should be taken. Members of the investigation committee cannot participate in this decision. *See id.; see also* Nev.Rev.Stat. § 233B.122. The board has the power to order that a physician undergo a

mental and physical examination if there is a reasonable question as to the physician's competence. *See* Nev.Rev.Stat. § 630.318.

Once the board decides to proceed with disciplinary action, it must bring charges against the physician and set a formal hearing. *See* Nev.Rev.Stat. § 630.339. The physician receives notice of the charges, the hearing and potential sanctions. *See id.* The physician is entitled to representation by counsel and can present evidence on all issues. *See* Nev.Rev.Stat. § 233B.121. The hearing panel or officer is not bound by formal rules of evidence, *see* Nev.Rev.Stat. § 630.346, although rules of privilege, relevance, documentary evidence, cross-examination and impeachment of witnesses generally seem to apply, *see* Nev.Rev.Stat. § 233B.123. Witnesses must not be barred from testifying

adequate safeguards that are comparable to those available in federal law. The umbrella of the Nevada statutory scheme "reduce[s] the need for private damages actions as a means of controlling unconstitutional conduct." *See Cleavinger*, 474 U.S. at 202, 106 S.Ct. 496.

Mishler argues that, despite the existence of these comprehensive procedures, it is the actual practice of the Nevada Board and its construction of the rules that this court must consider in determining whether adequate procedural safeguards exist. However, this assertion is inconsistent with principles of immunity law. "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359, 98 S.Ct. 1099. The acts of the Nevada Board are no less judicial or prosecutorial because they may have been committed in error. *See id.* It is the available procedures, not the manner in which they are exercised in a particular case, that is the critical inquiry for determining whether there are safeguards that reduce the need for private damages actions. Mishler's argument that these procedures were improperly followed is irrelevant to the inquiry. The Nevada statutory scheme presents adequate safeguards that are comparable to those found in federal law.

3. *Insulation from Political Influence.*

Mishler's primary argument is that the Board Members are not as independent as the federal administrative hearing officers discussed in *Butz*. This argument deserves some consideration. In *Butz*, the Court noted that, under the Administrative Procedure Act: the hearing examiners could not perform duties inconsistent with their duties as hearing examiners; the hearing examiners are not responsible to agents engaged in the performance of investigative or prosecutorial functions for the agency; the hearing officers could not consult another party regarding a fact in issue without providing notice and opportunity to participate; the hearing officers are assigned in rotation as far as is practicable; and the officers can be removed only for cause. *See Butz*, 438 U.S. at 514, 98 S.Ct. 2894.

Here, there is no general prohibition against board members' performing duties that are inconsistent with their duties as hearing officers. The only specific prohibition is that members of the investigative committee cannot participate in the decision as to whether the Board should bring charges against a physician. *See* Nev.Rev. Stat. §§ 233B.122, 630.311. However, just as in *Cleavinger*, Board Members participating in the disciplinary hearings "work with the fellow [Board Members] who lodge[ ] the charge against the [licensee] upon whom they sit in judgment." *Cleavinger*, 474 U.S. at 204, 106 S.Ct. 496. Thus, while there is some separation of the investigatory, prosecutorial and judging functions, the Nevada Board is not as insulated as the medical board in *Watts* where the investigatory and charging functions are performed by a separate state agency. *See Watts*, 978 F.2d at 277 (noting that the Tennessee medical board does not bring charges or conduct the investigation that led up to the issuance of the charges).

In addition, six of the nine board members must be doctors who actually practice medicine in Nevada. *See* Nev.Rev.Stat. § 630.060. This circumstance raises the

---

solely because of incompetency. *See* Nev. Rev.Stat. § 630.346. Proof of actual injury need not be established. *See id.* Oral proceedings must be transcribed upon request of any party. *See* Nev.Rev.Stat. § 233B.121.

If by clear and convincing evidence, the board determines that a violation of the regulations has occurred, it issues a written order containing findings and sanctions. *See id.* A

physician may apply to the board for removal of any sanctions imposed. *See id.* Any person aggrieved by a final order of the board is entitled to judicial review in district court. *See* Nev.Rev.Stat. § 630.356. Judicial review is confined to the record, unless irregularities in procedure are alleged. *See* Nev.Rev.Stat. § 233B.135.

specter that board members may achieve personal financial gain by revoking the licenses of other doctors and presents the strong potential for conflicts of interest which would not be present with federal hearing officers. However, in *Watts*, the medical board was composed entirely of physicians. *See Watts*, 978 F.2d at 275. There, the court determined that the "risk of self interest economic regulation" was not enough to deny absolute immunity. *Id.* at 276. Here, the risk of Board Members' acting out of their own self-interest is further diminished because of the presence of three non-physicians on the Board.

There is no prohibition against consulting other parties regarding the facts in issue. The regulations state only that evidence and investigation documents "*may* be kept confidential." Nev.Rev.Stat. § 630.336 (emphasis added). Board Members are not prohibited from "communicating and cooperating with any other licensing board or agency or any agency which is investigating a licensee." *Id.*

Board Members are appointed by the governor for four-year terms. *See* Nev. Rev.Stat. §§ 630.050–630.060. Board Members must be selected "without regard to their individual political beliefs" and only "may be removed by the governor for good cause." *Id.* §§ 630.060–630.070. No Board Member may "serve more than two consecutive full terms, but he may be reappointed after the lapse of [four] years." *Id.* § 630.050.

Thus, the Board Members lack some characteristics of independence of a judge or federal hearing officer: the investigatory, prosecutorial and judging functions of the Nevada Board are not entirely separate; two-thirds of the Board Members are themselves physicians, raising the potential for self-interested decisions; and the evidence is not fully confidential. Despite these differences, however, the structure of the Nevada Board and the procedural requirements of their decision-making process show that the Board Members are sufficiently insulated from political influence.

#### 4. *Other Butz Factors: Precedent, Adversariness, Correctability.*

It is unclear from the record to what extent the Nevada Board relies on precedent in making its disciplinary decisions. However, it is clear that the disciplinary process is adversary in nature and that errors made by the Board are correctable on appeal. Physicians are entitled to representation by counsel and may present evidence at a formal disciplinary hearing. *See* Nev.Rev.Stat. § 233B.121. The decision of the Board must be in writing and contain the Board's findings and any sanctions. *See id.* Judicial review of the Nevada Board's decision is available. *See* Nev.Rev.Stat. § 630.356.

Viewing the *Butz* factors in their totality, we hold, that while the Board Members do not have all of the attributes of a federal hearing officer, they are functionally comparable to judges and prosecutors. Thus, the Board Members of the Nevada Board of Medical Examiners are entitled to absolute immunity for their quasi-judicial acts.

### C. *Scope of Absolute Immunity for the Nevada Board of Medical Examiners*

 Even if the Board Members generally function in capacities comparable to those of judges and prosecutors, the protections of absolute immunity reach only those actions that are judicial or closely associated with the judicial process. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (holding that a judge was not entitled to absolute immunity for firing an employee).

There is no question that acts occurring during the disciplinary hearing process fall within the scope of absolute immunity; holding hearings, taking evidence, and adjudicating are functions that are inherently judicial in nature. However, Mishler asserts that two acts of the Nevada Board are neither judicial nor closely associated with the judicial process: the failure to respond to the Ohio Board's inquiry and Dr. Clift's swearing to the truth of facts in the disciplinary complaint.[7]

### 1. Ohio Board's Inquiry.

The act of responding to the Ohio Board inquiry is not entitled to absolute immunity. This court has already held a claim based on the response to the Ohio Board should not be dismissed at the Rule 12(b)(6) stage on the basis of qualified immunity because it was alleged to be a ministerial act. See Mishler II, 990 F.2d 1259. This act of responding to inquiries from other medical boards would seem to be, at its essence, an administrative function entailing examination of records and sending of correspondence. This act is not closely associated with the judicial process and thus falls outside the protections of absolute immunity.

7. Generally, in reviewing a motion to dismiss for failure to state a claim, the court only examines the content of the pleadings. See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.1994). When a complaint alleges the contents of a document, but the document is not attached to the pleading, the court may consider the document in ruling on a Rule 12(b)(6) motion. See id. at 454.

Mishler argues that Dr. Clift's signed disciplinary complaint against him was included within the scope of Mishler's complaint because it was referenced in the body of the complaint. However, Mishler's complaint only generally references the disciplinary complaint, stating that the board "filed and prosecuted disciplinary charges" and "falsely charg[ed][him] with professional incompetence and malpractice." Mishler's complaint does not specifically refer to the actual document or discuss its contents.

In the district court, Mishler's opposition motion argued that Dr. Clift's swearing to the

### 2. Disciplinary Complaint.

Dr. Clift's act of signing the disciplinary complaint under penalty of perjury is entitled to absolute immunity. Filing charges and initiating prosecution are functions that are integral to a prosecutor's work. Because "[e]xposing the prosecutor to liability for the initial phase of his prosecutorial work could interfere with his exercise of independent judgment," absolute immunity protects these acts. Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 509, 139 L.Ed.2d 471 (1997) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). However, a prosecutor is not entitled to absolute immunity for personally attesting to the truth of the facts in a certification for determination of probable cause under penalty of perjury. See Kalina, 118 S.Ct. at 509–10; see also Morley, 175 F.3d at 760. In Kalina, the Supreme Court noted that the law did not require the prosecutor to make a certification and that "[t]estifying about the facts is the function of the witness, not of the lawyer." 118 S.Ct. at 509–10.

Here, at the end of the disciplinary complaint, Dr. Clift personally swore to the following statement:

disciplinary complaint was a part of the unlawful conduct against him, citing to Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). The disciplinary complaint was attached to Mishler's opposition motion. The district court did not directly state that it had considered Dr. Clift's disciplinary complaint as a part of the pleadings; however, the court's order infers that it did. The court noted that it had reviewed the entire record in determining whether to grant the motion for reconsideration. In addition, the court's order cites Kalina, indicating that a prosecutor would not be entitled to absolute immunity for filing a sworn affidavit in support of an arrest warrant. Given the reference, albeit limited, to false charges in Mishler's complaint, and the district court's implicit acceptance of Dr. Clift's disciplinary complaint as a part of the pleadings, we will review Dr. Clift's disciplinary complaint in determining whether Mishler's second amended complaint states a claim.

Under penalty of perjury, the undersigned declares that he is the Secretary of the Nevada State Board of Medical Examiners, the complainant named in the foregoing Complaint; that he knows the contents thereof; that the pleading is true of his own knowledge, except as to those matters stated on information and belief, and that as to those matters, he believes them to be true.

According to the body of the complaint, those matters stated on information and belief are all of the acts alleged to constitute malpractice, professional incompetence, or violations of the Board's regulations. Prior to the listing of Mishler's alleged wrongful acts, the disciplinary complaint states "[t]hat the Secretary of the Board [Dr. Clift] is informed and believes, and upon such information and belief, charges and alleges that Respondent committed the following described acts."

Thus, Dr. Clift's act is distinguishable from the prosecutor's personal swearing to the truth of the facts in *Kalina.* Dr. Clift's statements are made only upon his information and belief. Moreover, these statements are made as a part of the actual disciplinary complaint against Mishler, not in a separate document to establish probable cause. Rather, the initiation of the disciplinary complaint arose from the statutorily required notification from the Washoe Medical Center that Mishler's hospital privileges had been terminated. Dr. Clift's statements, made upon his information and belief, as a part of the disciplinary complaint—which was forwarded to the Board Members for their determination of whether to proceed with a disciplinary hearing—is the equivalent of a prosecutor's initiation of charges. *Cf. Ostrzenski v. Seigel,* 177 F.3d 245, 250–51

(4th Cir.1999) ("[A] physician requested by the Board to conduct a peer review performs a function analogous to a prosecutor reviewing evidence to determine whether charges should be brought."). The mere use of the terms "under penalty of perjury" in the disciplinary complaint does not turn Dr. Clift into a complaining witness. Dr. Clift's exercise of his independent judgment as to whether to initiate charges against Mishler is entitled to the protection of absolute immunity.

## IV. CONCLUSION

The Board Members are entitled to absolute immunity for the acts that they perform which are closely associated with the judicial process.[8] However, absolute immunity does not apply to the act of responding to the Ohio Board's verification inquiry. If Mishler had alleged only acts that are entitled to absolute immunity, dismissal of his complaint would have been an appropriate course of action. However, as it stands, Mishler's seven claims are based on *all* of the alleged actions taken by the Board Members, some of which are protected by absolute immunity and some of which are not. Because a complaint should only be dismissed if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims, the district court was correct in not dismissing his complaint at this stage in the proceedings. *See Tyler v. Cisneros,* 136 F.3d 603, 607 (9th Cir.1998); *see also Morley,* 175 F.3d at 759.

AFFIRMED.

---

**8.** We do not reach the issue of whether absolute immunity for § 1983 claims would apply to Mishler's state law claims. Because the parties did not raise this issue before the district court, this court will not consider it for the first time on appeal. *See Dodd v. Hood River County,* 59 F.3d 852, 863 (9th Cir.1995). While the issue presents a pure question of law, the Board Members would be prejudiced by its consideration because they

had no opportunity to respond to Mishler's statutory argument, which was made in his reply brief to Dr. Clift. *See International Ass'n of Indep. Tanker Owners v. Locke,* 148 F.3d 1053, 1063–64 (9th Cir.1998). Therefore, this issue does not fall within the narrow circumstances which would enable this court to consider this argument for the first time on appeal.