Mahmoud YOONESSI, Plaintiff,

v.

ALBANY MEDICAL CENTER,
et al., Defendants.

No. CV 04–01884 ABC (EX).

United States District Court,
C.D. California.

Jan. 10, 2005.

Mahmood Yoonessi (Pro Se), Rancho Palos Verdes, CA, for Plaintiff.

Martin Ageson, Esq., Office of Attorney General of Calif., Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

COLLINS, District Judge.

Pending before the Court is a Motion to Dismiss filed by Ronald Joseph, Ronald Wender, Jane Zak Simon, and the Medical Board of California (collectively, "Defendants"). The Motion came on regularly for hearing before the Court on January 10, 2005. Upon consideration of the parties' submissions, the arguments of counsel and plaintiff, and the case file, the Court hereby GRANTS Defendants' Motion.

## I. FACTUAL BACKGROUND

Plaintiff alleges that Defendants committed fraud in revoking his license to practice medicine in California. Plaintiff, a board certified obstetrician, was licensed by the Medical Board of California to practice medicine in California. Defendants Joseph and Wender are members of the Medical Board of California. They both served on the Board when it revoked Plaintiff's license to practice in California. Defendant Simon is a Deputy Attorney General. She represented the Board when Plaintiff later challenged the Board's initial decision to revoke his license in California state court.

In revoking Plaintiff's license, the Medical Board of California relied, in part, on the prior findings of the New York State Board for Professional Medical Conduct. Plaintiff was previously licensed to practice medicine in New York, but the New York State Board revoked his license after finding that he committed numerous acts of misconduct. Plaintiff appealed the New York State Board's finding, but a New York state court upheld the decision.

Plaintiff steadfastly denies committing any misconduct. Instead, he claims that the Medical Board of California, as well as the New York State Board, discriminated against him because of his Middle Eastern origin. He attributes this discrimination to prejudice resulting from the September 11, 2001 attacks on the United States. He maintains that no evidence supports either the Medical Board of California's or the New York Sate Board's decision to revoke his license to practice medicine.

According to Plaintiff, Defendants Joseph, Wender, and Simon abused the powers and duties of their respective offices in connection with revoking Plaintiff's medical license. Specifically, Plaintiff accuses them of knowingly submitting false information about Plaintiff's competence and

past medical practices to both the Superior Court of California and the California Court of Appeal. Plaintiff further contends that Joseph, Wender, and Simon all committed perjury in the court proceedings involving Plaintiff's challenge to the revocation of his medical license. Plaintiff also faults Joseph and Wender for failing to hold the initial hearing regarding the revocation of Plaintiff's license within the statutory time limit.

On March 18, 2004, Plaintiff filed this action, in which he alleges seven causes of action against forty different defendants. He also has a parallel action pending in federal district court in New York. On September 1, 2004, Defendant Wender filed a Motion to Dismiss, which the Court granted with leave to amend. Subsequently, Defendants Joseph, Simon, and the Medical Board of California filed a separate motion to dismiss. While that motion was pending, Plaintiff filed a Second Amended Complaint on October 21, 2004. Accordingly, the Court struck the then-pending motion to dismiss and instructed Defendants Joseph, Simon, and the Medical Board of California to respond to Plaintiff's Second Amended Complaint.

On November 10, 2004, Defendants filed this Motion to Dismiss. On December 20, 2004, Plaintiff filed his Opposition to Defendants' Motion. Defendants did not file a Reply.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. *See* Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful · presumption against rejecting pleadings for failure to state a claim.' " *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan*, 108 F.3d at 249 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ") (citations omitted).

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). Furthermore, the complaint must be read in the light most favorable to plaintiff. *Id.* However, the Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.*, those facts presented in briefs, affidavits, or discovery materials). *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *Id.* at 453–54. Similarly, a court may consider documents that are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir.1988).

## III. DISCUSSION

Defendants have moved the Court to dismiss each of them from this action, arguing that Plaintiff cannot maintain his claims against any Defendant. First, Defendants contends Joseph and Wender are absolutely immune from Plaintiff's suit. Defendants assert that each of Plaintiff's allegations against Joseph and Wender involves acts that they allegedly committed in discharging their quasi-judicial and quasi-prosecutorial duties as members of the Medical Board of California. According to Defendants, even if Joseph and Wender had committed the alleged acts, those acts could not support a cognizable claim because such acts are judicial in nature and, therefore, entitled to absolute immunity. Likewise, Defendants assert that Simon is absolutely immune from suit for any act that she committed in representing the Medical Board of California before the Superior Court of California or the California Court of Appeal. Defendants maintain that Simon committed those actions in her official role as a Deputy Attorney General. Accordingly, her alleged actions cannot serve as the basis for a cognizable claim against her. Finally, Defendants contend that Plaintiff cannot maintain a claim against the Medical Board of California because the Board is entitled to sovereign immunity. As explained below, the Court agrees with each of Defendants' arguments.[1]

### A. Defendant Joseph and Wender Are Entitled to Absolute Immunity.

█ "Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacity." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir.2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 364, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "This immunity reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Olsen*, 363 F.3d at 922 (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L.Ed. 646 (1871)); *see also Mishler v. Clift*, 191 F.3d 998, 1003 (9th Cir.1999) ("The essential rationale is that, without protection from retaliatory suits, a judge would lose 'that independence without which no judiciary can be either respectable or useful.' A prosecutor's entitlement to absolute immunity flows from the performance of activities that are intimately associated with the judicial process.") (citations omitted).

█ Courts employ a functional approach to determine whether or not an official is entitled to absolute immunity. *Mishler*, 191 F.3d at 1003. "'Essentially, the court examines the function performed by the official and determines whether it is similar to a function that would have been entitled to absolute immunity when Congress enacted § 1983.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). If the official functions as the equivalent of a judge or a prosecutor, the

---

1. Defendants also offer several alternative reasons to dismiss the Complaint. For example, they argues that Plaintiff's Complaint is a forbidden de facto appeal from a state court judgment and, as such, is barred by the *Rooker–Feldman* doctrine. Defendants also assert that Plaintiff's current claims merely re-allege claims that have already been rejected by two state courts. Consequently, Plaintiff is precluded from relitigating those claims in this Court. The Court, however, need not reach these alternative arguments because it finds that Defendants Joseph, Wender, and Simon are absolutely immune and that the Medical Broad of California is entitled to sovereign immunity.

official will likely be entitled to absolute immunity for any acts committed in that role. *Olsen*, 363 F.3d at 923 ("We must consider whether the actions taken by the official are 'functionally comparable' to that of a judge or a prosecutor.") (citations omitted).

■ The Supreme Court, in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), identified the following non-exclusive factors that "embody characteristics of the judicial process" and aid in determining whether to grant absolute immunity: "(a) the need to assure that the official can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citing *Butz*, 438 U.S. at 512, 98 S.Ct. 2894).

Although the Supreme Court has never addressed the issue, two Ninth Circuit decisions have held that state medical boards and their officers enjoy absolute immunity for the non-ministerial acts that they commit in performing their duties.[2] First, in *Mishler v. Clift*, the Ninth Circuit found that members of the Nevada State Medical Board were absolutely immune from liability for acts they committed during a disciplinary hearing. *Mishler*, 191 F.3d at 1005–08. The *Mishler* Court also stated that an individual board member's act of filing an allegedly false disciplinary complaint against a physician was likewise entitled to immunity. *Id.* at 1009. Second, in *Olsen v. Idaho State Board of Medicine*, the Ninth Circuit, relying on *Mishler*, found that the Idaho State Medical Board and its members could not be sued for the quasi-judicial and quasi-prosecutorial actions they took in adjudicating a disciplinary dispute. *Olsen*, 363 F.3d at 928–29.

■ Here, as in *Mishler* and *Olsen*, the *Butz* factors weigh in favor of applying absolute immunity to Joseph's and Wender's alleged acts of using and making false accusations in revoking Plaintiff's license to practice medicine in California. The Court addresses each factor in turn below.

### 1. Need to Ensure Performance of Functions Without Harassment

The Medical Board of California, like the state medical boards in *Mishler* and *Olsen*, must function without harassment in order to promote its goals. The purpose of the Medical Board of California ("Board") is to protect the public. Cal. Bus. & Prof.Code § 2001.1. Furthering this purpose is the Board's "highest priority" in exercising its licensing, regulatory, and disciplinary functions. *Id.* The Board could not accomplish

---

**2.** Additionally, several other courts have reached the same result as the Ninth Circuit. *See, e.g., Olsen*, 363 F.3d at 923–24 (noting that Ninth Circuit's decision in *Mishler* accorded with "well-established case law holding medical board officials entitled to absolute immunity for their quasi-judicial and quasi-prosecutorial functions.") (citing *Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 702 (1st Cir.1995) (holding that medical board's counsel entitled to absolute immunity for investigation surrounding disciplinary complaint); *Pfeiffer v. Hartford Fire*

*Ins. Co.*, 929 F.2d 1484, 1490–91 (10th Cir. 1991) (same); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 782–83 (1st Cir. 1990) (holding that board officials are absolutely immune from suit by physician whose license was revoked); *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1515 (10th Cir. 1987) (holding that medical board members are entitled to absolute immunity)); *see also Mason v. Arizona*, 260 F.Supp.2d 807, 820–22 (D.Ariz.2003) (state board members and directors entitled to absolute immunity).

this purpose without having the power to, when necessary, deny applications to practice medicine in California or revoke existing licences. Such actions, however, are likely to lead to countless lawsuits by disgruntled physicians, such as Plaintiff. *See Mishler,* 191 F.3d at 1005 (concurring with First Circuit's observation "that disciplinary proceedings and the revocation of a physician's license are acts that are likely to stimulate numerous damages actions") (citing *Bettencourt,* 904 F.2d at 783). Accordingly, as in *Mishler,* promoting the goal of protecting the public requires that the Board operate without "the threat of harassment or intimidation." *Id.* at 1005.

### 2. Safeguards that Reduce the Need for Private Damages Actions

California's statutory scheme governing the Board's decisions and challenges to those decisions contains safeguards that effectively reduce the need for private damages actions. As in *Mishler* and *Olsen,* the Board functions under a comprehensive set of regulations, which are codified in the California Code of Regulations and the California Business and Professions Code. Under those regulations, a physician, such as Plaintiff, who is deemed unsuitable to practice medicine in California may request a hearing regarding that finding. Cal.Code Regs., tit. 16, § 1301 (2001). Moreover, assuming the physician is unsuccessful at the hearing, he or she may thereafter seek further review of the Board's decision in state court. Cal.Civ. Proc.Code § 1094.5(f). The state court then has authority to thoroughly inquire into the Board's decision, including whether the Board acted within its jurisdiction, whether the Board conducted a fair hear-

ing, and whether the Board's decision resulted in prejudicial abuse of discretion. Cal.Civ.Proc.Code § 1094.5(b).[3] Indeed, when analyzing this statutory scheme in another context, the Ninth Circuit observed that California provides a "meaningful opportunity" for aggrieved physicians to challenge the Board's decisions. *See Kenneally v. Lungren,* 967 F.2d 329, 333 (9th Cir.1992) (stating that California's "statutory framework provides a meaningful opportunity for [physicians] to present [their] constitutional claims for independent review prior to the Board's decision becoming effective").

In short, California's statutory scheme governing the Board's decisions adequately reduces the need for private damages actions. Consequently, this factor also weighs in favor of granting its members absolute immunity.

### 3. Insulation from Political Influences

The structure of the Board insulates it from political influences. The Board has twenty-one members, nine of whom are non-physicians or "public" members. Cal. Bus. & Prof.Code § 2001. The presence of these public members minimizes the possibility that the remaining Board members might act out of self-interest in issuing or refusing to issue a licence to practice in California. *See Mishler,* 191 F.3d at 1006–07 (noting that "risk of Board Members acting out of their own self-interest is further diminished" because of presence of three public members on nine-person board); *Olsen,* 363 F.3d at 925 (finding that presence of two public members on seven-person Board lessened pos-

---

**3.** Specifically, Section 1094.5(b) provides: "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.

Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Cal.Civ. Proc.Code § 1094.5(b)

sibility that Board members would act out of self-interest).

Moreover, the manner in which the Board's members are selected minimizes political influence over the Board. None of the twenty-one Board members, including Joseph and Wender, is elected by the people of California. Instead, the Governor of California appoints nineteen individuals to the Board. Thereafter, each of those nineteen members must be confirmed by the State Senate. Cal. Bus. & Prof.Code § 2001. The Senate Rules Committee and the Speaker of the Assembly each appoint one of the two remaining Board members, both of whom are public members. *Id.* Once confirmed, the Board members serve a four-year term. Cal. Bus. & Prof.Code § 2010. Although Board members can be removed, the appointing power can do so only for neglect of duty, incompetency, or unprofessional conduct. Cal. Bus. & Prof.Code § 2011.

Furthermore, California's rules restricting those deemed qualified to serve on the Board further reduces the possibility of politics influencing the Board. For instance, no person may serve as a Board member if he or she "owns any interest in any college, school, or institution." Cal. Bus. & Prof.Code § 2007. Additionally, no more than four Board members may hold full-time appointments to the faculties of any approved medical school in the state of California. *Id.* Aside from the nine public members, only licensed physicians and surgeons may serve as Board members. *Id.* Finally, no one can serve on the Board unless he or she has been a citizen of California for at least five years. Cal. Bus. & Prof.Code § 2007.

Citing similar safeguards, both the *Mishler* and the *Olsen* Courts found that state medical board members were insulated from political pressures. The Court sees no reason to reach a different conclusion here.

### 4. Remaining *Butz* Factors: Precedent, Adversariness, and Correctability

The remaining *Butz* factors also weigh in favor of finding the Board's members absolutely immune. First, California's statutory scheme provides that the Board's decisions may be designated as precedential decisions when they contain "a significant legal or policy determination" generally applicable in likely recurring situations. Cal.Code Regs., tit. 16, § 1364.40(a) (2000). Although the Board may reverse such a designation, it can do so only after serving public notice of its intent. Cal.Code Regs., tit. 16, § 1301(d) (2001). Second, as the *Olsen* Court observed, disciplinary hearings are necessarily adversarial. *See Olsen,* 363 F.3d at 925 (stating that "the Board's proceedings are clearly adversarial"). Finally, as described above, California provides for appeals from the Board's decisions, first through a Board hearing and then through the state court process.

After reviewing California's statutory scheme governing the Board and its activities, the Court finds that the Board and its members, including Joseph and Wender, "function in a sufficiently judicial and prosecutorial capacity to entitle them to absolute immunity." *Id.* at 926.

### B. The Scope of Joseph's and Wender's Immunity Precludes Plaintiff's Claims Against Them.

Finding that absolute immunity applies to any quasi-judicial or quasi-prosecutorial actions that either Joseph or Wender committed as Board members does not end the Court's analysis. Instead, the Court must now determine which, if any, of their alleged acts "are not sufficiently connected to their judicial function to warrant the shield of absolute immunity." *Olsen,* 363 F.3d at 926.

"[T]he protections of absolute immunity reach only those actions that are judicial or closely associated with the judicial process." *Mishler,* 191 F.3d at 1007. Thus, in *Mishler,* the Ninth Circuit explained that acts committed during a disciplinary hearing process fall within the scope of absolute immunity. *Id.* at 1008. Later, in *Olsen,* the Ninth Circuit elaborated on *Mishler*'s previous explanation, adding that acts intimately related to a Board member's adjudicatory role in licensing physicians are likewise absolutely immune. *Olsen,* 363 F.3d at 928.

In contrast, ministerial acts enjoy no such protection. *Mishler,* 191 F.3d at 1008. In *Mishler,* the Ninth Circuit refused to apply absolute immunity to a Nevada Board member's failure to respond to inquiries from another state medical board. *Id.* The *Mishler* Court reasoned that such an act, or failure to act, was not closely associated with the judicial process, but rather constituted an administrative function entailing examination of records and sending of correspondence. *Id.* Applying the same reasoning, the *Olsen* Court refused to accord absolute immunity to acts pertaining to a state medical board's billing practices. *Olsen,* 363 F.3d at 929.

Here, by contrast, Plaintiff's allegations against Joseph and Wender involve only actions closely related to their respective roles in a quasi-judicial or quasi-prosecutorial process. Indeed, assuming they made fraudulent statements about Plaintiff, or relied on previously uttered fraudulent statements, they did so only in connection with revoking Plaintiff's license to practice medicine in California. These alleged acts, unlike responding to general inquiries or maintaining billing procedures, cannot be classified as ministerial or administrative in nature. Rather, they are inseparable from Joseph's and Wender's ultimate decision to revoke Plaintiff's license. As such, their alleged acts fall squarely within the scope of absolute immunity.

Moreover, whether or not Joseph and Wender held a timely hearing regarding the revocation of Plaintiff's medical license is inconsequential. Indeed, even if, as Plaintiff alleges, Joseph and Wender failed to hold the hearing in a timely manner, this fact would not somehow transform their otherwise quasi-prosecutorial actions into ministerial actions. Timely or not, Joseph and Wender allegedly committed the fraudulent acts in connection with revoking Plaintiff's license to practice medicine in California. Thus, their acts were quasi-prosecutorial in nature.

## C. Defendant Simon Is Entitled to Absolute Immunity.

An attorney in the Attorney General's Office is immune from lawsuits for any action she commits in discharging her litigation-related duties. *Bly–Magee v. California,* 236 F.3d 1014, 1018 (9th Cir.2001). This immunity can take one of two forms. First, if sued as a member of the Attorney General's Office, the attorney has absolute official immunity. *Id.* (citing *Pena v. Gardner,* 976 F.2d 469, 473 (9th Cir.1992)). Alternatively, if sued in her individual capacity, the attorney is "similarly absolutely immune for conduct during performance of official duties." *Bly–Magee,* 236 F.3d at 1018 (citing *Fry v. Melaragno,* 939 F.2d 832, 836–37). This immunity does not extend, however, to actions that are "wholly unrelated to or outside of [the attorney's] official duties." *Bly–Magee,* 236 F.3d at 1018.

Here, Simon is absolutely immune from Plaintiff's suit. Each of Plaintiff's allegations against Simon relates exclusively to actions that Simon allegedly committed in discharging her official duties as a Deputy Attorney General. Indeed, Plaintiff's only allegations against Simon involve fraudulent statements that Simon purportedly

made while representing the Medical Board of California in legal proceedings before two California courts. Such actions, by their nature, are related to litigation. As such, Simon is absolutely immune from any suit involving those actions.

### D. The Medical Board of California is Entitled to Sovereign Immunity.

██ "The Eleventh Amendment bars suits against [a][s]tate or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible,* 169 F.3d 1182, 1185 (9th Cir.1999). A state agency's consent to suit cannot be implied; rather, the agency's consent is effective " 'only where [it is] stated by the most express language.' " *Yakama Indian Nation v. State of Washington Dept. of Revenue,* 176 F.3d 1241, 1245 (9th Cir.1999) (quoting *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990)). Furthermore, a state agency's act of pleading sovereign immunity in its first responsive pleading shows that the agency does not intend to waive its immunity defense. *Yakama Indian Nation,* 176 F.3d at 1245.

██ Here, the Medical Board of California, as a state agency,[4] is entitled to sovereign immunity. Moreover, the Board has not consented to Plaintiff's suit against it. On the contrary, the Board raised the sovereign immunity defense at the earliest time possible. Accordingly, Plaintiff cannot maintain his suit against the Board.

In short, Plaintiff cannot maintain an action against any of the moving Defendants.

### E. Permitting Plaintiff to Amend Would Be Futile.

Plaintiff cannot amend his Complaint to state a viable cause of action against any of the moving Defendants. The Court has already afforded Plaintiff one opportunity to amend his Complaint as to Defendant Wender. Because Plaintiff's Second Amended Complaint offers no other relevant factual support for his repeated claims, the Court finds it would be futile to afford Plaintiff yet another opportunity to amend his claims against Wender. Although the Court has not previously dismissed either Joseph, Simon, or the Board, the Court sees no way in which Plaintiff could amend his Second Amended Complaint to state a viable cause of action against any of these Defendants. Indeed, Plaintiff can only plead the same facts regarding Joseph as Plaintiff alleged against Wender, as both were members of the Medical Board of California and, therefore, committed the exact same acts. Because Plaintiff cannot maintain a claim against Wender, Plaintiff likewise cannot maintain a claim against Joseph. Similarly, Plaintiff's only allegations against Simon involve the fraudulent statements that she allegedly made before the California courts. But no matter how many times or ways in which Plaintiff attempts to amend, these actions will always be subject to absolute immunity. Finally, no amendment will overcome the Medical Board of California's entitlement to sovereign immunity. As such, granting leave to amend would be futile in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion and DISMISSES Defendants with prejudice.

---

4. *See Forster v. County of Santa Barbara,* 896 F.2d 1146, 1149 (9th Cir.1990) (stating that Board is state agency for purposes of sovereign immunity analysis).